T.C. Memo. 2000-44

UNITED STATES TAX COURT

HARRY R. GROSS, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 11839-98.                    Filed February 10, 2000.

Harry R. Gross, pro se.

<u>Michael D. Zima</u>, for respondent.

MEMORANDUM OPINION

DAWSON, <u>Judge</u>:  This case was assigned to Special Trial

Judge D. Irvin Couvillion pursuant to Rules 180, 181, and 183.[1]

_____

     [1]    All Rule references are to the Tax Court Rules of
Practice and Procedure.

The Court agrees with and adopts the opinion of the Special Trial Judge, which is set forth below.

## OPINION OF THE SPECIAL TRIAL JUDGE

COUVILLION, Special Trial Judge:  Respondent issued a notice of final determination denying petitioner's claim to abate interest for his 1988 taxable year.  Petitioner filed a timely petition for review of that determination with this Court.  The sole issue for decision is whether petitioner is entitled to an abatement of interest pursuant to section 6404(e).[2]

## Background

Some of the facts have been stipulated and are so found. The stipulation of facts and the attached exhibits are incorporated herein by this reference.  Petitioner's legal residence at the time the petition was filed was Tampa, Florida.

After receiving an extension of time to file, petitioner filed his 1988 Federal income tax return timely on August 15, 1989.  On the return, petitioner reported adjusted gross income of $184,222,[3] income tax due of $50,742, self-employment tax due

---

[2]     Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the year at issue.

[3]     Petitioner reported a $241,690 loss and no tax due on his 1987 Federal income tax return.  The $241,690 loss reported on petitioner's 1987 return was applied as a net operating loss carryforward in the calculation of petitioner's 1988 adjusted gross income figure.

of $5,859, and an addition to tax due of $3,620[4] under section

6654(a) for failure to pay estimated taxes.  Petitioner made no

Federal tax deposits and had no withholding credit during 1988.

Further, petitioner did not remit a payment with the 1988 return.

On his 1989 Federal income tax return petitioner reported a

$66,742 loss.  He filed with his return an IRS Form 1045,

Application for Tentative Refund, computing the  net operating

loss for 1989 and electing a carryback of the loss to

petitioner's 1988 tax year.  On June 11, 1990, the IRS allowed

the 1989 net operating loss carryback and applied it to

petitioner's 1988 account as of April 18, 1990.  The 1989 net

operating loss reduced petitioner's 1988 income tax liability by

$19,519.  After the carryback of the 1989 loss to 1988,

petitioner's account reflected the following amounts still owing

for 1988:

```
$31,223.00  Income tax
  5,859.00  Self-employment tax
  2,177.00  Sec. 6654, Failure to pay estimated taxes
  6,342.53  Sec. 6651(a)(2), Failure to pay tax
  6,929.17  Interest to April 18, 1990
$52,530.70  Total
```

---

[4]     In an amended return, petitioner recalculated the
addition to tax under sec. 6654(a) reducing it to $2,177.  For
our purposes here, the amended amount was accepted by the
Internal Revenue Service.

Petitioner's 1988 balance due was assigned to an IRS revenue officer in Nashville, Tennessee, where petitioner resided at the time. The revenue officer worked with petitioner to determine whether petitioner could satisfy his 1988 tax liability. By letter dated February 26, 1991, petitioner, among other things not relevant here, stated that he expected to eliminate his 1988 tax liabilities with a loss he expected to report on his 1990 tax return. On March 27, 1991, the revenue officer closed his collection file on petitioner's 1988 account, deeming it uncollectible, after determining petitioner was unable to pay the amount due. On that same date, petitioner sent the revenue officer a letter and a copy of petitioner's 1990 return.

Petitioner filed his 1990 Federal income tax return timely, which reported a loss of $319,820. However, petitioner did not file a Form 1045 with his 1990 return with respect to the net operating loss he sustained.

In March 1992, petitioner contacted the IRS and learned that he still owed tax, additions to tax, and interest for 1988. By letter dated May 4, 1992, petitioner requested the revenue officer to remove the tax, additions to tax, and interest from his 1988 account as he thought they had been satisfied by his 1990 loss. The revenue officer, by letter dated June 2, 1992, responded to petitioner's letter and provided a summary of petitioner's 1988 account balance. While the summary reflected

that petitioner's 1989 loss had been carried back to, and that certain levied amounts had been applied to, petitioner's 1988 liability, the summary did not reflect that petitioner's 1990 loss had been carried back. There was no communication between petitioner and the Nashville revenue officer after this letter.[5]

At some point between January 1992 and June 1994, petitioner moved to Tampa, Florida. The collection file relating to petitioner's 1988 balance due was reassigned to a revenue officer in the IRS office at Tampa, Florida. In June 1994, petitioner began communicating with an Appeals officer in Tampa. After working with petitioner on his case, the revenue officer referred petitioner's case to the IRS Examination Division. Upon reviewing petitioner's 1990 return, a revenue agent concluded that petitioner had a valid net operating loss for 1990, although the revenue agent did make some adjustments to petitioner's 1990 return. The parties agreed to the adjustments proposed in the revenue agent's report on January 26, 1996, and petitioner subsequently filed an amended return for 1988 requesting a carryback of the 1990 net operating loss. On March 11, 1996, respondent allowed the carryback of the 1990 net operating loss and posted it to petitioner's 1988 account as of April 15, 1991,

---

[5] The levied amounts totaled $1,011, and it appears from the underpayment summary offered into evidence at trial that this amount was applied toward the self-employment taxes of $5,859, thus reducing the self-employment taxes to $4,848.

the date the 1990 net operating loss became available (the date the 1990 return was due). Petitioner's 1990 net operating loss carryback (the 1990 carryback) satisfied all of petitioner's income tax liability for 1988. However, petitioner's 1988 account continued to have a balance due for additions to tax and interest. Additionally, petitioner continued to have a balance due for self-employment taxes, since the net operating loss carryback could not be used to offset self-employment income. See sec. 1402(a)(4). At this point, petitioner owed the following amounts for 1988:

```
$   -0-      Income taxes
  4,838.00   Self-employment taxes[1]
  2,177.00   Sec. 6654, Failure to pay estimated taxes
  6,342.53   Sec. 6651(a)(2), Failure to pay tax
 11,970.82   Interest to 4/15/91
$25,328.35   Total
```

[1] On brief, respondent stated that there was a mathematical error in the application of the $1,011 levied amounts, and the correct balance of self-employment taxes should have been $4,848 instead of $4,838.

On November 10, 1996, petitioner filed an IRS Form 843, Claim for Refund and Request for Abatement, with respondent requesting the Commissioner to abate all interest and penalties associated with petitioner's 1988 tax year. On January 9, 1998, the Commissioner issued a notice of final determination denying petitioner's claim to abate the interest and penalties for 1988. On July 2, 1998, petitioner petitioned this Court to review the

Commissioner's failure to abate the additions to tax and interest associated with his 1987 and 1988 tax years. At trial and on brief, petitioner narrowed his request for review to 1988.

## Discussion

### A. Abatement of Additions to Tax

This Court is a court of limited jurisdiction, and we may exercise our jurisdiction only to the extent authorized by Congress. See Naftel v. Commissioner, 85 T.C. 527, 529 (1985). Section 6404(g)[6] does not give this Court jurisdiction to review respondent's failure to abate additions to income tax. See Krugman v. Commissioner, 112 T.C. 230, 237 (1999). Therefore, we may not review the Commissioner's failure to abate the additions to tax associated with petitioner's 1988 tax year.

### B. Abatement of Interest

The Commissioner's authority to abate an assessment of interest involves the exercise of discretion, and this Court gives due deference to the Commissioner's discretion. See Woodral v. Commissioner, 112 T.C. 19, 23 (1999); Mailman v. Commissioner, 91 T.C. 1079, 1082 (1988). However, this Court may order abatement where the Commissioner abuses his discretion by

---

[6] Sec. 6404(g) was redesignated sec. 6404(i) by the Internal Revenue Service Restructuring and Reform Act of 1998, Pub.L. 105-206, secs. 3305(a), 3309(a), 112 Stat. 743, 745.

failing to abate interest. See sec. 6404(g); <u>Krugman v. Commissioner</u>, <u>supra</u> at 239.

Section 6404(e)(1)(B) provides, in pertinent part, that the Commissioner may abate the assessment of interest on any payment of tax if an error or delay by the taxpayer in paying his or her tax is attributable to an officer or employee of the IRS being erroneous or dilatory in performing a ministerial act.[7] For purposes of section 6404(e)(1), an error or delay is taken into account only (1) if no significant aspect of such error or delay can be attributed to the taxpayer, and (2) after the IRS has contacted the taxpayer in writing with respect to such deficiency or payment. See sec. 6404(e)(1). Congress intended the Secretary to abate interest "where failure to abate interest would be widely perceived as grossly unfair." H. Rept. 99-426 (1985), 1986-3 C.B. (Vol. 2) 844; S. Rept. 99-313 (1985), 1986-3 C.B. (Vol. 3) 208. However, Congress did not intend that abatement "be used routinely to avoid payment of interest." <u>Id.</u>

---

[7] In 1996, sec. 6404(e) was amended under sec. 301 of the Taxpayer Bill of Rights 2, Pub. L. 104-168, 110 Stat. 1452, 1457 (1996), to permit the Secretary to abate interest with respect to an unreasonable error or delay resulting from managerial and ministerial acts. This amendment, however, applies to interest accruing with respect to deficiencies or payments for tax years beginning after July 30, 1996. This case involves petitioner's 1988 tax year. Therefore, the amendment is inapplicable to the case at bar. See <u>Woodral v. Commissioner</u>, 112 T.C. 19, 25 n.8 (1999).

The regulations, in relevant part, provide that the term "ministerial act" means a procedural or mechanical act that does not involve the exercise of judgment or discretion. See sec. 301.6404-2T(b)(1), Temporary Proced. & Admin. Regs., 52 Fed. Reg. 30163 (Aug. 13, 1987).[8] The regulations issued by the Secretary provide several examples of what does and does not constitute a ministerial act.

Although petitioner requested an abatement of all interest associated with his 1988 tax year, the acts petitioner contends delayed the payment of his 1988 tax liability did not occur until March of 1991 or later. Thus, petitioner's failure to pay his 1988 tax liability prior to March of 1991 was solely attributable to petitioner. Therefore, the interest that accrued on petitioner's 1988 tax liability before March of 1991 is not abatable. The Commissioner, therefore, did not abuse his discretion in refusing to abate the interest for this time period.

Although the 1990 carryback was not applied to the 1988 tax year until March 11, 1996, petitioner concedes that no interest

---

[8] The final Treasury regulation under sec. 6404 was issued on Dec. 18, 1998. The final regulation contains the same definition of ministerial act as the temporary regulation. See sec. 301.6404-2(b)(2), Proced. & Admin. Regs. The final regulation generally applies to interest accruing on deficiencies or payments of tax described in sec. 6212(a) for tax years beginning after July 30, 1996. See sec. 301.6404-2(d)(1), Proced. & Admin. Regs.

accrued on petitioner's 1988 income tax liability after the due date of his 1990 return, April 15, 1991, because of respondent's retroactive application of the 1990 carryback on that date. However, petitioner contends that respondent should abate the interest that accrued on petitioner's outstanding self-employment taxes and additions to tax from April 15, 1991, to the present. Petitioner claims the revenue officer in respondent's Nashville office agreed to apply petitioner's 1990 carryback to eliminate completely petitioner's 1988 income and self-employment tax liabilities, as well as all the additions to tax and interest associated with petitioner's 1988 tax year. Petitioner claims the revenue officer in respondent's Nashville office told him not to file a Form 1045 with his 1990 return. While petitioner conceded at trial that the 1990 carryback could not be used to eliminate his liability for self-employment taxes, additions to tax, or interest, petitioner claims he was unaware of this fact until early 1996. Petitioner claims that, if the revenue agent had not advised him not to file a Form 1045, or if respondent had properly applied the 1990 carryback in 1991, then petitioner would have become aware at that time that the 1990 carryback could only be used to eliminate income tax liability. Petitioner claims he could have paid the remaining 1988 liabilities in

1991.[9]  Thus, petitioner contends the interest that accrued on his 1988 account from April 15, 1991, to the present, is attributable to delays in the performance of ministerial acts by IRS employees.

There is no evidence other than petitioner's self-serving testimony to support his assertion that the IRS revenue officer made any promises to him or advised him not to file a Form 1045 with his 1990 return.  Rather, the record indicates that the correspondence between petitioner and the revenue officer brought out the fact that petitioner's 1990 loss had never been carried back to the 1988 tax year.  As a result of that correspondence, petitioner's 1990 income tax return was audited, the amount of the loss was accepted (with some modifications), and ultimately applied as of April 15, 1991, to completely offset the 1988 income tax liability.  However, the parties never reached an agreement or compromise on settling the remainder of petitioner's 1988 liability.  Moreover, there is no persuasive evidence that the revenue agent advised petitioner against filing a Form 1045. While petitioner claimed the IRS abused and threatened him, his

---

[9]    Petitioner made this statement at trial, believing that his only remaining liability was the self-employment taxes of $4,838.  As he testified, "I perhaps could have found * * * $6,000, begged or borrowed it from friends, a whole lot easier than I could have come forward with * * * $40,000."  Petitioner, however, misapprehended what his liability was in 1991.  As noted earlier, petitioner's total remaining liability as of Apr. 15, 1991, was $25,328.35.

own correspondence and testimony indicate that the IRS employees he interacted with were cooperative and patient with petitioner. Petitioner admits he was aware that the law required him to file a Form 1045 to elect whether his 1990 loss was to be carried back or carried forward. However, petitioner did not file a Form 1045 with his 1990 return. Without instruction from petitioner, respondent did not act on petitioner's 1990 net operating loss. More pointedly, petitioner was able to ascertain the nature or amount of his tax liabilities when he contacted the IRS employees in March 1992 but did not attempt to pay his liabilities. Further, when the revenue agent confirmed petitioner's 1988 account balance by letter in May 1992, petitioner did nothing for almost 2 years. Petitioner's delay in paying his 1988 tax liabilities is solely attributable to petitioner. Thus, the interest that accrued on petitioner's 1988 tax liability between April 15, 1991, and the present is not abatable. On this record, the Commissioner's refusal to abate interest was not an abuse of discretion under section 6404(e). Respondent's determination is sustained.

Decision will be entered for respondent.